IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

MILER SMITH                                                                     PLAINTIFF

V.                              CASE NO.: 5:13CV00300 JM/BD

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                 DEFENDANT

## RECOMMENDED DISPOSITION

I.      **Instructions**

The following recommended disposition was prepared for U.S. District Judge

James M. Moody, Jr.  A party to this dispute may file written objections to this

recommendation.  An objection must be specific and state the factual and/or legal basis

for the objection.  An objection to a factual finding must identify the finding and the

evidence supporting the objection.  Objections must be filed with the clerk of the court no

later than 14 days from the date of this recommendation.[1]  The objecting party must serve

the opposing party with a copy of an objection.  Failing to object within 14 days waives

the right to appeal questions of fact.[2]  If no objections are filed, Judge Moody may adopt

the recommended disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections
waives right to de novo review and to appeal magistrate judge's findings of fact).

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## II.   Report

Miler Smith seeks judicial review of the denial of his applications for disability

insurance benefits and supplemental security income.  Mr. Smith based his disability

claims on mood disorder and neck, back, and left ankle problems.  (SSA record at 64, 67)

At the hearing, Mr. Smith amended his onset date to March 16, 2010.  (*Id*. at 41)  Thus,

this case considers whether Mr. Smith was disabled from March 16, 2010 until the

administrative law judge ("ALJ") denied his claims on June 30, 2013.

Mr. Smith was 41 years old on his alleged onset date.  (*Id*. at 18)  He had a high

school diploma and past work as a welder and line worker.  (*Id*.)  Mr. Smith lived with his

girlfriend.  (*Id*. at 41)

### A.   The Commissioner's Decision

After holding a hearing, an ALJ denied Mr. Smith's claims.  The Commissioner's

ALJ determined that Mr. Smith had severe impairments–status post fibular open

reduction and internal fixation of the left ankle, mood disorder, and poly-substance abuse

in remission.  (*Id*. at 13)  The ALJ also found, however, that Mr. Smith had the residual

functional capacity ("RFC") to perform a limited range of sedentary work.  (*Id*. at 15)

The ALJ found that Mr. Smith could lift up to ten pounds; walk and stand two hours and

sit six hours in an eight-hour workday; and must be allowed to use a cane to ambulate

effectively.  (*Id*. at 15)  He also found that, due to mental impairments, Mr. Smith was

limited to the requirements for unskilled work and was precluded from performing

complex or detailed tasks.  (*Id*. at 15)  Because the vocational expert testified that there

were jobs available that a person with Mr. Smith's RFC could perform, the ALJ

concluded that Mr. Smith was not disabled under the Social Security Act and denied the

applications.  (*Id*. at 18-19)

 After the Commissioner's Appeals Council denied Mr. Smith's request for review,

the ALJ's April 5, 2012 decision became a final decision for judicial review.  (*Id*. at

1-6)  Mr. Smith appealed.  (Docket entry #2)  In reviewing the decision, the court must

determine whether substantial evidence supported the decision and whether the ALJ made

a legal error.[3]

 B.      Impairments in Combination

 Mr. Smith complains that the ALJ failed to consider his impairments in

combination.  (#14 at p. 4)  More specifically, he argues the ALJ did not consider his

---

 [3]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the
Commissioner's findings are supported by substantial evidence and whether the
Commissioner conformed with applicable regulations); *Slusser v. Astrue*, 557 F.3d 923,
925 (8th Cir. 2009) (stating that the court's "review of the Commissioner's denial of
benefits is limited to whether the decision is 'supported by substantial evidence in the
record as a whole'"); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold
the Commissioner's decision to deny an applicant disability benefits if the decision is not
based on legal error and if there is substantial evidence in the record as a whole to support
the conclusion that the claimant was not disabled.").

knee disorder; post traumatic stress disorder (PTSD); gastroenteritis; pain in the shoulder, low back, and neck; and high blood pressure.

Here, the ALJ pointed out that Mr. Smith's ankle and fibula fracture was surgically repaired after a six-week delay caused by either Mr. Smith's failure to show up for surgery or positive drug screens that required cancellation of the surgery.  (*Id*. at 752-54, 1558, 1646)  At a follow-up visit two months after the surgery, x-rays showed evidence of good healing.  Another x-ray taken almost a year after his surgery showed evidence of surgical stabilization of his fracture.  (*Id*. at 1734)

Mr. Smith was diagnosed with shoulder arthralgia and chronic musculoskeletal pain for which he was given Toradol injections with good relief.  (*Id*. at 1643, 1662-63, 1654-55, 1765)  See *Turpin v. Colvin*, __ F.3d. __, 2014 WL 1797396 (8th Cir. 2014) (citations omitted)(impairments controlled by treatment or medication cannot be considered disabling).  And there is no evidence that any of Mr. Smith's physicians assessed functional limitations due to chronic musculoskeletal pain.  See *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005)(none of claimant's treating physicians offered opinion she was so impaired or disabled she could not work any job); *Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003)(lack of functional restrictions on activities is inconsistent with claim of disability); *Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003)(ALJ may consider absence of such opinion by treating physicians).

Although Mr. Smith was assessed with gastroenteritis in May, 2009, a November 2010 CT scan of his abdomen showed no indication of an active inflammatory process. (*Id*. at 1634, 1763)  Mr. Smith's hypertension was controlled when he was compliant with his medication and dietary restrictions.  (*Id*. at 1672-73, 1850-51)

Mr. Smith alleges the ALJ erred by failing to consider his PTSD, but he does not elaborate on how his alleged PTSD affected his ability to work.  (#14 at p. 9)  In his opinion, the ALJ acknowledged Mr. Smith's PTSD diagnoses and the recommendation that he attend mental health self-management classes.  (SSA record at 16, 257)  The ALJ went on to review Mr. Smith's treatment records, however, and they indicated that when Mr. Smith's poly-substance abuse was in remission, he did well.  (SSA record at 1659-60, 1740-42, 1814-16)

The ALJ considered all of Mr. Smith's impairments individually and in combination, and there is substantial evidence in the record to support the ALJ's determination that the impairments did not warrant a finding of disability.  (SSA record at 13-18)

C.     Residual Functional Capacity

Mr. Smith complains that the ALJ erred in determining that he had the residual functional capacity to perform sedentary, unskilled work.  Mr. Smith first argues that, because the ALJ found that he could not perform a full range of sedentary work, the ALJ was obligated to find him disabled.  (#14 at 5-6)  Social Security Ruling 96-9p does not

require a finding of disability under these circumstances.  Instead, it requires that the ALJ

consider whether there is other work in the national economy that the individual is able to

perform given his age, education and work experience.  SSR 96-9p, 1996 WL 374185.

Here, the ALJ posed a hypothetical to the vocational expert ("VE") that included all of

Mr. Smith's limitations that were supported by the record, then properly relied on the

VE's testimony that a person with Mr. Smith's limitations could still perform work.

Further, the ALJ's assessment of Mr. Smith's RFC is supported by substantial

evidence in the record as a whole.  As the ALJ noted, x-rays of Mr. Smith's ankle after

surgery showed it was healing well.  (SSA record at 1495)  A physical therapist noted that

Mr. Smith had safe and appropriate gait and transfers with the use of a cane.  (*Id.* at 1687)

With regard to Mr. Smith's alleged mental impairments, the ALJ reviewed Mr.

Smith's treatment records, which indicated that when Mr. Smith's poly-substance abuse

was in remission, he did well and had adequate sleep, appetite, energy and concentration.

(SSA record at 1659-60, 1740-42, 1814-16)

The ALJ also reviewed the report of state agency physician, Winston Brown, M.D.

After reviewing Mr. Smith's treatment records, Dr. Brown concluded that Mr. Smith

would be able to perform unskilled work.  (*Id*. at 1463-64)  Jon Etienne Mourot, Ph.D.

also reviewed Mr. Smith's treatment records and agreed with Dr. Brown's opinion that

Mr. Smith had the RFC to perform unskilled work.  The ALJ did not err by relying on the

state agency physicians' assessments, along with the other evidence in the record to

determine Mr. Smith's RFC.  See  20 C.F.R. § 416.927(e); SSR 96–6p (state agency

physicians' opinions are expert opinions, and an ALJ must consider these opinions, along

with the other evidence of record).

There is sufficient evidence to support the ALJ's conclusion that Mr. Smith could

perform sedentary, unskilled work where he was able to use a cane to ambulate.

D.     Credibility

Mr. Smith challenges the ALJ's finding that Mr. Smith's complaints about the

intensity, persistence, and limiting effects of his symptoms were not fully credible.  The

ALJ evaluated Mr. Smith's subjective complaints under the standard set forth in *Polaski*

*v. Heckler*, 751 F.2d 943, 948 (8th Cir. 1984), and the record supports the ALJ's

conclusion that Mr. Smith's allegations of extreme limitation in his ability to walk, stand,

sit, remember, concentrate, and complete tasks were not fully credible.

Mr. Smith's treating providers noted multiple instances where Mr. Smith failed to

comply with treatment.  (*Id*. at 228, 235, 240-41, 250, 271, 278 (failure to attend anger

management group); 1544, 1562, (modifying cast so he could weight bear); 1755

(shortened his physical therapy sessions); 1672-73, 1850-51 (failure to comply with

dietary restrictions and to take medications for hypertension))[4]   Further, many of Mr.

---

[4]Mr. Smith says that he did not take his medication because he was homeless.  This
allegation is controverted, however, by Mr. Smith's testimony at the hearing that he had
lived with his girlfriend for ten years. (*Id*. at 41-42) Additionally, Veterans
Administration progress notes indicate Mr. Smith lived with his girlfriend. (*Id*. at 254)
Accordingly, any period of alleged homelessness would have been brief.

Smith's impairments were noted to be treatable with medication.  (*Id*. at 1655, 1676-77)

Finally, Mr. Smith reported daily activities including taking care of his personal needs,

cooking, visiting the doctor, shopping, paying bills, and handling his finances.  (*Id*. at

201-03).

Here, the ALJ gave good reasons for discounting Mr. Smith's testimony, and his

credibility determination is entitled to some deference.  *Gregg v. Barnhart*, 354 F.3d 710,

713 (8th Cir. 2003).

E.      Vocational Expert Testimony

Mr. Smith claims the ALJ erred by failing to encompass all of his limitations in his

hypothetical posed to the vocational expert ("VE").  More specifically, he claims that the

ALJ erred by using a GAF score of 60 when the record includes GAF scores in the 21 to

45 range.  He also complains that the ALJ did not include post traumatic stress disorder.

(#14 at p. 7)

Here, however, the ALJ's hypothetical posed to the VE included all of the

limitations that were supported by the record.  Mr. Smith does not point to any evidence

in the record to support his claim that he had limitations related to PTSD.  Further, while

it is true the Mr. Smith had GAF scores in the 21-45 range, these scores were assessed

before Mr. Smith's substance abuse was in remission.  (*Id*. at 650-51, 1688-89)  Records

from May 2011 reflect that Mr. Smith had a stable, euthymic mood, and a linear thought

process and content.  (*Id*. at 1742)  His GAF score at that time was 62.  (*Id*. at 1742)

There is substantial support for the ALJ's RFC determination which was accurately reflected in the hypothetical posed to the vocational expert.

### III.    Conclusion and Recommendation

Considering the record as a whole, substantial evidence supports the ALJ's decision.  The ALJ made no legal error.  For these reasons, the Court recommends DENYING Mr. Smith's request for relief (docket entry #2) and AFFIRMING the Commissioner's decision.

DATED this 12th day of June, 2014.

_____
UNITED STATES MAGISTRATE JUDGE